**MARVA RAMIREZ, Plaintiff**
**vs.**
**ROY V. SAVAGE LTD., FESTUS PEMBERTON, and DALTON ENGLAND, Defendants**

Civil No. 458/1998

Superior Court of the Virgin Islands

Division of St. Thomas and St. John

December 18, 2007

RONALD W. BELFON, ESQ., Belfon & Evert, St. Thomas, V.I., *Attorney for Plaintiff.*

BRUCE BENNETT, ESQ., Hunter, Cole & Bennett, St. Croix, V.I., *Attorney for Defendant.*

KENDALL, *Judge*

## MEMORANDUM OPINION

(December 18, 2007)

**THIS MATTER** is before the Court on Defendant Festus Pemberton's "Motion to Vacate Default, March 19, 2004 Judgment by Default or, in the alternative, to Release Attachment and/or Stay Marshal's Sale." Upon review and consideration of Defendant's Motion, Plaintiff's Opposition, and Defendant's Reply to Plaintiff's Opposition, the Motion will be denied based upon the reasons set forth below.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On December 6, 1997, a motor vessel owned by Roy V. Savage Ltd. and operated by Festus Pemberton docked on the waterfront in Charlotte Amalie, St. Thomas. Plaintiff was standing on the apron of the waterfront. The vessel, with the ramp partially lowered, made contact with Plaintiff's body and crushed her against the automobile behind her. Plaintiff lost consciousness and was taken to the emergency room of the then St. Thomas Hospital, where she was diagnosed with contusions to her arm,

abdomen, hips and legs. On June 9, 1998, this action for damages was brought against Defendant Roy V. Savage Ltd.[1]

On November 16, 1999, Plaintiff moved to amend the Complaint to add two additional defendants, Mr. Festus Pemberton and Mr. Dalton England. On December 1, 1999, the Court ordered Defendants to respond to Plaintiff's Motion within ten (10) days, failing which the Motion would be deemed conceded. Defendants failed to respond. Defendant Pemberton was personally served with the Summons & Amended Complaint on September 27, 2001.

On December 20, 1999, Attorney Michael Joseph moved to withdraw as counsel for Defendant company, claiming that it had failed to confer with him despite repeated attempts to do so, and had not paid him. By Order dated December 24, 1999, the Court granted the motion to withdraw, which order was personally served on Defendant Pemberton.

On February 11, 2000, Defendant Pemberton was deposed by Plaintiff's Attorney. Attorney Joseph was also present at the deposition. Mr. Pemberton testified that he was the President of Defendant company, and had held this title for about six years. (30(b)(6) Dep. Tr. at 11). He was the captain and operator of the boat on December 6, 1997, the day of the incident with Plaintiff. *Id.* at 19-21. Everything pertaining to the vessel was controlled and operated by him. *Id.* at 25. Mr. Pemberton did not have a license to operate ocean-going vessels. (Dep. Tr. at 6). The boat was operated with the loading ramp partially closed, so that it projected out ten (10) feet. (Dep. Tr. at 16). Mr. Pemberton conceded that it was possible to remove the entire 10-feet projection by pulling the ramp all the way up, but it was "more work." *Id.* at 20.

After Defendants failed to answer or otherwise respond to the Complaint, Plaintiff requested entry of default. A Hearing was held on January 28, 2003. Neither Defendant nor an attorney for Defendant was present. The Court granted Plaintiff's motion to amend the Complaint, and granted the Default against Mr. Pemberton.[2] A Hearing on damages was held on December 1, 2003. After hearing testimony and viewing the evidence, the Court awarded Plaintiff Two Hundred Sixty Nine Thousand

---

[1] Although this action has been pending in the Superior Court since 1998, it was not assigned to the undersigned judge until September 6, 2005.

[2] As Defendant England had not been served within the time permitted by law, the case against him was dismissed.

and Seventy-Three Dollars and Ninety One Cents ($269,073.91) in damages.[3] The Judgment was entered on March 19, 2004.

On October 19, 2004, the Marshal was Ordered to satisfy the Judgment out of the personal property of Roy V. Savage Ltd. and Defendant Pemberton. On January 13, 2005, the Marshal attached three (3) tow trucks and a boat belonging to Defendant Pemberton.

The next day, Attorney Bruce Bennett, representing Defendant Pemberton, filed a "Motion to Vacate Judgment."[4] Attorney Bennett claimed that the tow trucks were jointly owned property, and the means by which Defendant Pemberton earned his livelihood. Attached to the Motion was an Affidavit of Defendant Pemberton stating he was only a crewmember on the vessel, not the captain, on the day of the incident. He further averred that he was never informed that Attorney Joseph was no longer representing him. The three (3) attached tow trucks were released as jointly owned property.

## II. ANALYSIS

Defendant Pemberton contends that since Plaintiff's Motion to amend the Complaint and add additional parties was not granted until January 28, 2003, he was not required to answer the Amended Complaint which was served on him on September 27, 2001, as the Plaintiff did not yet have leave of Court to serve such a pleading. The Court notes that on December 1, 1999, Defendant Roy V. Savage Ltd. was ordered to respond to Plaintiff's Motion to Amend within ten (10) business days, failing which the Motion would be deemed conceded. Defendant failed to file a responsive pleading within that time, or, for that matter, at any time since then. The Plaintiff's Motion to Amend the Complaint and add parties, therefore, was uncontested by Defendant and deemed conceded. The Amended Complaint, therefore, was the operable pleading when

---

[3] Damages for medical expenses in the amount of Six Thousand Two Hundred Ten Dollars and Seventy-Nine Cents ($6,210.79), compensatory damages for present pain and suffering in the amount of One Hundred Fifty Thousand Dollars ($150,000.00), compensatory damages for future pain and suffering in the amount of Seventy Five Thousand Dollars ($75,000.00), punitive damages in the amount of Twenty Five Thousand Dollars ($25,000.00), and reimbursement for loss of annual leave in the amount of Twelve Thousand Eight Hundred Sixty-Three Dollars and Twelve Cents ($12,863.12)

[4] The Motion was later supplemented with a "Motion to Vacate Default Judgment or, in the alternative, to Release Attachment and/or stay Marshal's Sale" filed on January 21, 2005.

Defendant Pemberton was served, Defendant Pemberton was a party to the suit, and he was therefore required to answer the Complaint.

Defendant further contends that since the Default proceedings went forward on January 28, 2003, the day the Court granted the Motion to Amend, Mr. Pemberton was not afforded twenty (20) days to respond to the Amended Complaint. While it is true that Defendant should have been given twenty days to respond to the Amended Complaint, as provided under FED. R. CIV. P. 12, the fact remains that Defendant did not respond to the Amended Complaint or any Court Order until two years later, after his property had been attached by the Marshal. The Court's failure to wait twenty days before entering default was therefore harmless.

## A. Entry of an Appearance

Plaintiff contends that Attorney Joseph never entered an appearance on behalf of Mr. Pemberton, and as Mr. Pemberton never filed an Answer to the Amended Complaint, through counsel or *pro se,* he was in default. The issue of "appearance" goes to whether Mr. Pemberton was entitled to three days notice of the default hearing. Under FED. R. CIV. P. 55(b)(2), a plaintiff need only serve the defendant with notice of the application for default if the defendant has appeared in the action. If Mr. Pemberton did not appear in the action, he was not entitled to notice of the default hearing.

"[A]n appearance in an action involves some presentation or submission to the court." 10A WRIGHT, MILLER & KANE, FEDERAL PRACTICE AND PROCEDURE § 2686 at 41 (1998). A defendant need not respond directly to the complaint in order to be deemed to have made an appearance. *Id.* at 43. A defendant may be deemed to have "appeared" for purposes of FED. R. CIV. P. 55 if he "clearly manifested an intention to defend the action." *Walker & Zanger Ltd. v. Stone Design S.A.,* 4 F. Supp. 2d 931, 934-35 (C.D. Cal. 1997). "[I]n order to ensure defendant an opportunity to defend against plaintiff's application, a court usually will try to find that there has been an appearance by defendant." WRIGHT, *supra,* at 45. In *Muniz v. Vidal,* 739 F.2d 699, 700 (1st Cir. 1984), the First Circuit found that the defendants had "appeared" in the action, even though they did not file any formal responsive pleading, because there were sufficient manifestations during the unsuccessful settlement negotiations to indicate defendants' intent to defend.

182

Defendant contends that Mr. Pemberton made an appearance in the action through Attorney Joseph. As Attorney Joseph was the only attorney served with copies of Plaintiff's court filings and Orders by the Court, even after the additional defendants were added, it was understood that Attorney Joseph represented both Roy V. Savage Ltd. and Mr. Pemberton.

■ Although the fact that Attorney Joseph was the only attorney served with the filings and Court Orders does not automatically mean that Attorney Joseph was counsel for both defendants, this Court finds that Attorney Joseph was counsel for both Roy V. Savage Ltd. and Mr. Pemberton. Specifically, at the February 11, 2000 deposition held at Attorney Belfon's offices, Attorney Michael A. Joseph was listed as the "Attorney for Defendants." It was apparently understood by Plaintiff that Attorney Joseph represented Mr. Pemberton as well as Roy V. Savage, Ltd. More importantly, Mr. Pemberton met with Plaintiff's Counsel at his office on two occasions, i.e. for his deposition on February 11, 2000 and the mediation later that year. Mr. Pemberton had sufficiently manifested an intent to defend the Complaint, and is therefore deemed to have made an appearance in the action.

## B. Notification of the Application for Default

Mr. Pemberton claims that he did not receive notice of the default hearing or trial in this case. Since he made an appearance in the action through Attorney Joseph, written notice of the application for judgment at least 3 days prior to the hearing on such application was required. "Failure to give the required notice is generally regarded by the courts as a serious procedural irregularity." *Muniz*, 739 F.2d at 701 (citing 6 MOORE'S FEDERAL PRACTICE ¶ 55.05[3] at 55-57). Absent special circumstances, the lack of notice requires that the default be set aside. *Muniz*, 739 F.2d at 701.

Attorney Joseph, however, was given notice of the application for default. A copy of the Order scheduling the Hearing for January 28, 2003 was directed to Attorney Joseph. Mr. Pemberton cannot contend that he was represented by Attorney Joseph for the purpose of making an appearance, and at the same time escape the consequences of being represented by an attorney, i.e. constructive notice. As notice of the default hearing was given to Attorney Joseph, Mr. Pemberton is deemed to have received notice. *See Link v. Wabash R. Co.*, 370 U.S. 626, 634, 82 S. Ct. 1386, 1390, 8 L. Ed. 2d 734 (1962) ("each party is deemed

bound by the acts of his lawyer-agent and is considered to have notice of all facts, notice of which can be charged upon the attorney").

■ Notice of the hearing on damages, moreover, was given to both Mr. Pemberton and Attorney Joseph. The Clerk of the Court sent notice of the hearing to Mr. Pemberton, by certified mail, at his last known address of record. The notice was also sent to Attorney Joseph, although it was returned to the court marked as unclaimed. Plaintiff therefore did everything required under the Rules, and Mr. Pemberton was sufficiently notified of the application for default and the subsequent hearing.

## C. Standard for Vacating Default Judgment

FED. R. CIV. P. 55(c) provides: "For good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b)." Factors to be considered in determining the good cause necessary to set aside a default judgment are: (1) whether the plaintiff will be thereby prejudiced, (2) whether the defendant has a meritorious defense, and (3) whether the default was the result of the defendant's culpable conduct. *Farnese v. Bagnasco*, 687 F.2d 761, 764 (3d Cir. 1982). Each factor will be discussed herein.

### 1. Prejudice to Plaintiff

Defendant alleges that Plaintiff will not be prejudiced by setting aside the judgment, as she will still have "her day in court."

In *Emcasco Ins. Co. v. Sambrick*, 834 F.2d 71, 74 (3d Cir. 1987), the Third Circuit found that plaintiff would not prejudiced if the default judgment were vacated, and stated, "Delay in releasing satisfaction on a claim rarely serves to establish the degree of prejudice sufficient to prevent the opening of a default judgment entered at an early stage of the proceeding." (citing *Feliciano v. Reliant Tooling Co., Ltd.*, 691 F.2d 653, 656-57). In *Emcasco*, however, the suit was filed in September 1986 and default judgment was entered in January 1987, four months later. *Id.* The defendant moved to set aside the default judgment two weeks after its entry. *Id.* Similarly, in *Feliciano*, the plaintiff filed suit in 1978, and the default judgment was entered in 1981, three years later. 691 F.2d at 654-55.

■ Here, Plaintiff initiated the action in 1998, nine years ago. Nearly a decade has passed since Plaintiff sustained the injuries from the vessel

owned by Roy V. Savage Ltd., yet she has yet to recover anything from Defendants. Unlike the defendant in *Emcasco,* Mr. Pemberton did not move to vacate the Default Judgment until ten (10) months after it was entered. There is no reason Defendant Pemberton's dilatoriness in defending this action should be borne by Plaintiff. As nine years have passed since this action was commenced, it would be prejudicial to require Plaintiff to start over from the beginning.

## 2. Meritorious Defense

In support of Defendant Pemberton's contention that he has a meritorious defense, he submitted an affidavit stating that he was only a crewmember on the vessel that struck Plaintiff, not the captain. He was acting at the orders of the captain of the vessel and therefore cannot be held responsible or be considered to have acted negligently. "[A]ny negligence of the vessel involved in the incident complained of, which is disputed, could only be attributable to the captain of the vessel since he is the human embodiment of the vessel." (Motion to Vacate Judgment, p. 2)

In an earlier deposition, however, Mr. Pemberton testified that he was the captain of the vessel on December 6, 1997, the day of the incident with Plaintiff. (30(b)(6) Dep. Tr. at 21). While Defendant was under oath, with his counsel Attorney Joseph sitting next to him, he testified that he was operating the vessel when it struck Plaintiff, *id.* at 19, and that everything pertaining to the vessel was controlled by him. *Id.* at 25. The deposition took place on February 11, 2000. Defendant's affidavit swearing to conflicting facts was executed on January 14, 2005, nearly five years later.

In *Hackman v. Valley Fair*, 932 F.2d 239, 241 (3d Cir. 1991), the plaintiff, faced with summary judgment, filed an affidavit that contradicted his earlier deposition. The district court rejected the plaintiff's attempt to contradict his deposition testimony and granted summary judgment for defendants. *Id.* The Third Circuit affirmed, holding that "[w]hen, without a satisfactory explanation, a nonmovant's affidavit contradicts earlier deposition testimony, the district court may disregard the affidavit in determining whether a genuine issue of material fact exists." *Id.* "[A] party cannot create a genuine issue of fact sufficient to survive summary judgment simply by contradicting his or her own previous sworn statement (by, say, filing a later affidavit that flatly

contradicts that party's earlier sworn deposition) without explaining the contradiction or attempting to resolve the disparity." *Cleveland v. Policy Management Systems Corp.*, 526 U.S. 795, 806, 119 S. Ct. 1597, 1603, 143 L. Ed. 2d 966 (1999).

In *Martin v. Merrell Dow Pharmaceuticals, Inc.*, 851 F.2d 703 (3d Cir. 1988), the plaintiff, whose baby was born with serious birth defects, sued the manufacturer of Bendectin, a drug prescribed for treatment of nausea associated with pregnancy. The plaintiff testified at a deposition that she began taking Bendictin on May 19, 1966, when her doctor prescribed it for her. *Id.* at 704. When it was determined by a prenatal development expert that the development of the organs in which her child suffered birth defects had ended before May 19, the defendant moved for summary judgment. *Id.* at 705. The plaintiff then filed an affidavit, fourteen (14) months after her deposition, in which she stated for the first time that she had taken Bendectin left over from an earlier pregnancy prior to May 19, 1966. *Id.* at 705. The Third Circuit, affirming the grant of summary judgment, found that "no explanation was offered in the affidavit for the contradictions. As a result, we conclude that it was permissible for the district court to disregard the affidavit for purposes of determining whether there was a material dispute of fact." *Id.* at 706. "The numerous other courts of appeals that have considered the situation in which a party contradicts, without satisfactory explanation, his or her prior testimony, have reached the same decision." *Id.*

Although these cases involved an affidavit submitted for the purpose of surviving a motion for summary judgment, this Court sees no reason why the same principle should not be applied here, when an affidavit submitted to set aside a default judgment flatly contradicts an earlier deposition. Defendant has offered no explanation for the contradiction. In reply to Plaintiff's Opposition, in which Plaintiff accused Defendant of being untruthful in his affidavit, Defendant submitted a copy of his marriage license to prove that he was not untruthful at the deposition when he stated that he was not married. No attempt, however, was made to resolve the disparity in his testimony concerning his position on the vessel on the day of the incident. Defendant's affidavit, inasmuch as it cannot be reconciled with his testimony at the deposition, must be disregarded.

Based on the foregoing, Defendant has failed to show that he has a meritorious defense. As was stated in his own brief, any negligence associated with the operation of the vessel can only be attributable to the

captain. As Mr. Pemberton was the captain of the vessel when the accident occurred, he is responsible for any damages caused by his negligence, and should be held liable.

### 3. Defendant's Culpable Conduct

Defendant contends that he is not to blame for the default because he was not aware of his attorney's withdrawal from the case, and consequently believed that Attorney Joseph was representing him the entire time. As Attorney Joseph continued to act as Mr. Pemberton's attorney after his motion to withdraw was granted by coming to Mr. Pemberton's deposition on February 11, 2000 and signing a stipulation in regards to the designation of a mediator on September 11, 2000, it is understandable how Mr. Pemberton might be confused as to Attorney Joseph's status. Mr. Pemberton was, however, personally served with a copy of the Court's Order granting Attorney Joseph's withdrawal from the case. Even if Attorney Joseph's actions immediately following the Order were ambiguous, that does not excuse Mr. Pemberton's complete neglect of the case from December of 1999 until January of 2005. He claimed that he had paid Attorney Joseph thousands of dollars for his defense, but his only proof of payment was a receipt for Four Hundred Dollars ($400.00) from January 26, 1998, before the present lawsuit was even commenced.

The Supreme Court has held that "clients must be held accountable for the acts and omissions of their attorneys." *Pioneer Investment Servs. Co. v. Brunswick Associates Ltd. P'ship*, 507 U.S. 380, 396, 113 S. Ct. 1489, 1499, 123 L. Ed. 2d 74 (1993). In *Link v. Wabash R. Co.*, 370 U.S. at 626, the Court upheld the dismissal of the lawsuit when the client's attorney failed to attend a scheduled pretrial conference. In explaining why this was not an unjust result for the client, the Court stated:

> Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent. Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent and is considered to have notice of all facts, notice of which can be charged upon the attorney.

*Id.* at 633-34. There is no reason why the sins of the client's attorney should be visited upon the opposing party. *Id.* at 634 n.10.

■Defendant cites *United States v. Moradi*, 673 F.2d 725, 728 (4th Cir. 1982), to support the contention that the client should not be punished for the mistakes of the attorney. In *Moradi,* the Fourth Circuit stated that "justice . . . demands that a blameless party not be disadvantaged by the errors or neglect of his attorney." *Id.* at 728. Defendant, however, was not a blameless party. In Attorney Joseph's Motion to Withdraw, he claimed that Mr. Pemberton failed to confer with him in spite of repeated attempts, and failed to pay him for his services. Moreover, this is not a case of the Defendant missing a single court date or failing to respond to a single pleading. Rather, this is a case in which Defendant failed to appear or respond in any manner whatsoever over a period of five years. Even if Defendant believed that Attorney Joseph was still representing him, he cannot forego any responsibility for the case and ignore it for five years. He had adequate notice of the lawsuit, both against the company Roy V. Savage and against him individually. This Court finds that the Defendant was dilatory in his defense of the action, and therefore culpable for the default and default Judgment.

## D. Attached Property is Exempt from Execution

As the three tow trucks that were seized by the Marshal have been released to Defendant, the argument that the property was exempt from execution is now moot.

## III. CONCLUSION

Defendant having failed to show "good cause" for vacating the entry of default or any ground to set aside the default judgment under FED. R. CIV. P. 60(b), the Motion will be **DENIED**. An appropriate Order is attached.